# Third District Court of Appeal

## State of Florida

Opinion filed May 20, 2026.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D25-2466
Lower Tribunal Nos. 23-202-GD-02; 23-3910-GD-02

_____

**Aislynn Thomas-McDonald, et al.,**
Petitioners,

vs.

**Jorge E. Silva,**
Respondent.


A Writ of Certiorari to the Circuit Court for Miami-Dade County, Jose Luis Fernandez, Judge.

Freeman Mathis & Gary, LLP, and Robert M. Klein, and Christopher J. Fraga; Lawson Huck Gonzalez, PLLC, and Eric C. Reed, Jason B. Gonzalez, Alex J. Fumagali and Caitlin N. Emling (Orlando), for petitioners.

Silva & Silva, P.A., and Paul Jon Layne, for respondent.


Before LINDSEY, LOBREE, and BOKOR, JJ.

LINDSEY, J.

This petition arises from guardianship proceedings initiated by Respondent, attorney Jorge E. Silva, to determine the capacity of his father, Orlando G. Silva ("Orlando"), and to be appointed his guardian. Petitioners, Aislynn Thomas-McDonald and Thomas-McDonald Law Firm, P.A. ("Thomas-McDonald" and the "Law Firm," collectively, "Petitioners"), who are petitioners/counter-defendants in the proceeding below, seek a common law writ of certiorari directed at the trial court's order overruling Thomas-McDonald's Objections to Interrogatories 2 and 3 (the "Order"). Thomas-McDonald alleges that answering these interrogatories requires her to disclose her medical background, including any psychotherapy and medications taken. She argues this information is irrelevant to the claims and defenses in this action and is privileged under Florida's statutory psychotherapist-patient privilege. We agree.

The question before us is whether a court appointed attorney who provided legal services in a guardianship proceeding must disclose her confidential medical information as part of her fees application for services rendered to the opponent of those fees. The answer is a constitutional no.[1]

---

[1] See FLA. CONST. art. I, § 23 ("Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein. This section shall not be construed to limit the public's right of access to public records and meetings as provided by law.").

Further, no Florida case cited by Silva allows compelled disclosure of confidential medical information on these facts and we decline to do so here. For the reasons below, we grant the petition and quash the order on review.

**BACKGROUND**

This petition arises from Silva's guardian proceedings to determine the capacity of his father, Orlando, who is the Ward in this proceeding. In March 2023, Silva was appointed Orlando's guardian after Orlando was found to be incapacitated. Thomas-McDonald was also approved as Orlando's court-appointed counsel.

It is undisputed that under section 744.108, Florida Statutes (2025), an attorney who renders services to a ward is entitled to a reasonable fee for those services. Consequently, in January 2023, Thomas-McDonald filed a Petition for Order Authorizing Payment of Attorney's Fees and Costs from December 14, 2022, through January 15, 2023. Silva objected to this fee request in his capacity as Orlando's guardian.

In June 2023, Thomas-McDonald filed an Amended Verified Petition for Payment of Attorney's Fees and Costs ("Amended Petition"). Under the Amended Petition, Thomas-McDonald requested that "an Order be entered awarding Final Judgment in favor of a fee award for the counsel of Orlando

G. Silva," including "a reasonable fee for time incurred in rendering legal services during the mental health proceeding [of] $55,433.00 as well as costs of $27,478.37, less $3,300.00 paid, for the total due at present for $79,611.37." Silva objected again and filed a declaration that Thomas-McDonald's fee petition proceedings constituted adversary matters under Florida Probate Rule 5.025(b).[2] Silva sought denial of the Amended Petition and sanctions against Thomas-McDonald.

Discovery followed. Silva deposed Thomas-McDonald and as a part of that testimony, Silva's attorney questioned Thomas-McDonald about her medical history related to therapy:

> Q. Are you seeing a psychiatrist?
>
> A. Am I seeing a psychiatrist? No, I'm not seeing a psychiatrist. I have a primary care physician.
>
> Q. Have you been seeing one in the past? A psychologist?
>
> A. Yes, I have seen a psychologist because of the -- in the period of time of this case, it's caused an enormous amount of marital stress.
>
> And so my husband and I have seen a psychologist for marital counseling because of the amount of stress and anxiety that I have as a result of this, and how it has affected my marriage.

---

[2] "**Declared Adversary Proceedings**. Other proceedings may be declared adversary by service on interested persons of a separate declaration that the proceeding is adversary." Fla. Prob. R. 5.025(b) (emphasis in original).

4

Q. Do you have any sort of a -- of any symptoms of paranoia of any kind?

A. Definitely not, no.

Based on this brief line of questioning, Silva served five interrogatories on Thomas-McDonald. As relevant here, the second and third interrogatories requested Thomas-McDonald to:

> 2. Please state the name and contact information of the psychologist, psychiatrist, and/or mental health care provider providing medical services to you.
>
> 3. Please state the name of any medicine and/or prescription medication you may have taken at or near the time of your deposition on August 5, 2025 including the name of the medicine, amount of dosage, and the name of the physician that prescribed same to you.

Thomas-McDonald objected to each on the same grounds:

> **ANSWER**: Objection. This interrogatory serves no legitimate purpose and is merely meant to harass and/or unduly embarrass Thomas-McDonald. Additionally, this request is neither relevant to any party's claim or defense nor proportional to the needs of the case, considering the importance of this discovery in resolving the issues presented in these proceedings. See Fla. R. Civ. P. 1.280(c).
>
> Furthermore, it seeks to intrude upon Thomas-McDonald's constitutional right to privacy. See FLA. CONST. art. I, § 23.

(Emphasis in original).

Silva set Thomas-McDonald's objections for hearing, and on November 12, 2025, counsel for the parties appeared before the trial court. During that hearing, Thomas-McDonald argued that the requested mental-health records were privileged under Florida's statutory psychotherapist-patient privilege[3] and the interrogatories lacked relevance to either Thomas-McDonald's fee petition or Silva's then-pending counterclaim and corresponding request for sanctions.

In response, Silva argued that Thomas-McDonald's statements in her deposition testimony that she had "seen a psychologist for marital counseling because of the amount of stress and anxiety that [she has] as a result of [her dispute with Silva], and how it affected [her] marriage," "sufficiently put [her] mental condition at issue in the case, such as within the meaning of the

---

[3] Section 90.503(2), Florida Statutes (2025) provides:

> (2) A patient has a privilege to refuse to disclose, and to prevent any other person from disclosing, confidential communications or records made for the purpose of diagnosis or treatment of the patient's mental or emotional condition, including alcoholism and other drug addiction, between the patient and the psychotherapist, or persons who are participating in the diagnosis or treatment under the direction of the psychotherapist. This privilege includes any diagnosis made, and advice given, by the psychotherapist in the course of that relationship.

Nelson v. Womble decision, 657 So. 2d 1221, where if the mental and emotional condition is relevant to the claims, the Court can order discovery."

Following that hearing, the trial court entered its Order overruling Thomas-McDonald's Objections to Interrogatories 2 and 3, finding in part that:

1. The objections to interrogatories 2 and 3 are overruled.

2. The Court finds the discovery sought is relevant to the claims and/or defenses in this adversary proceeding, as well as to the credibility of the witness, and the witness has opened the door to this discovery.

3. Aislynn Thomas-McDonald shall amend her interrogatory answers to provide the requested information within 15 days.

This timely petition followed.

## STANDARD OF REVIEW

To be entitled to certiorari relief, a petitioner must establish: (1) a departure from the essential requirements of the law; (2) resulting in material injury for the remainder of the case; (3) that cannot be corrected on post-judgment appeal. Blades v. State, Dept. of Revenue ex rel. Stewart, 943 So. 2d 300, 302 (Fla. 3d DCA 2006); Bd. of Regents of State v. Snyder, 826 So. 2d 382, 387 (Fla. 2d DCA 2002). The second and third elements are "sometimes referred to as irreparable harm," Nader v. Fla. Dep't of Highway

7

Safety & Motor Vehicles, 87 So. 3d 712, 721 (Fla. 2012), and "[t]he establishment of irreparable harm is a condition precedent to invoking certiorari jurisdiction." Stockinger v. Zeilberger, 152 So. 3d 71, 73 (Fla. 3d DCA 2014).

"[C]ertiorari is appropriate when a discovery order departs from the essential requirements of law, causing material injury to a petitioner throughout the remainder of the proceedings below and effectively leaving no adequate remedy on appeal." Allstate Ins. Co. v. Langston, 655 So. 2d 91, 94 (Fla. 1995). It is "the proper vehicle to review discovery orders compelling the production of information that is protected by the statutory psychotherapist-patient privilege." J.B. v. State, 250 So. 3d 829, 831 (Fla. 3d DCA 2018).

## ANALYSIS

Thomas-McDonald seeks certiorari relief from the trial court's order overruling her relevancy objections and requiring her to serve discovery responses to the interrogatories at issue. Although we are generally reluctant to review relevancy issues by certiorari, this is the rare case where the primary issue is one of privacy, not relevancy alone. Cf. Colbert v. Rolls, 746 So. 2d 1134, 1135 (Fla. 5th DCA 1999) ("In this case, the primary issue is one of relevancy, not privacy, and appellate courts in certiorari

8

proceedings are reluctant to review relevancy issues by certiorari."); accord Costco Wholesale Corp. v. Ditmars, 427 So. 3d 136, 137 (Fla. 3d DCA 2025), reh'g denied (Jan. 30, 2026) ("While 'irrelevant discovery alone is not a basis for granting certiorari,' . . . discovery orders may warrant certiorari relief when they depart from the essential requirements of the law and result in irreparable harm."); Poston v. Wiggins, 112 So. 3d 783, 785 (Fla. 1st DCA 2013) ("Certiorari may be appropriate where a discovery order compels disclosure of medical or other records that infringe upon a party's constitutional privacy rights.").

The irreparable harm analysis here is straightforward. Florida has a constitutional right to privacy. This right applies to medical records, including mental health records. See Weaver v. Myers, 229 So. 3d 1118, 1126 (Fla. 2017) (quotation omitted) ("[A] patient's medical records enjoy a confidential status by virtue of the right to privacy contained in the Florida Constitution"); Dominguez v. Omana, 381 So. 3d 1271, 1273 (Fla. 6th DCA 2024) ("Medical records are protected by the right to privacy in the Florida Constitution."). So, Thomas-McDonald's mental health treatment records are protected by the right to privacy in the Florida Constitution.

And, if any of Thomas-McDonald's mental health treatment records are irrelevant to her fee petition or pleadings, she will be irreparably harmed.

9

This satisfies our certiorari jurisdiction. See Rodriguez v. Currey, 410 So. 3d 114, 116 (Fla. 5th DCA 2025), reh'g denied (May 15, 2025) ("Thus, when a court compels the production of irrelevant medical records, the impacted litigant suffers irreparable harm."); Tanner v. Hart, 313 So. 3d 805, 807 (Fla. 2d DCA 2021) ("[A]n order that compels production of a party's medical records satisfies the jurisdictional element of irreparable harm."); Zarzaur v. Zarzaur, 213 So. 3d 1115, 1117 (Fla. 1st DCA 2017) ("Erroneous disclosure of medical records qualifies as irremediable harm."); Scully v. Shands Teaching Hosp. & Clinics, Inc., 128 So. 3d 986, 988 (Fla. 1st DCA 2014) ("Where, as here, an order permits discovery of medical or other records that are protected by constitutional or statutory privileges, this court has [certiorari] jurisdiction to review the order because the harm caused by the erroneous production of such records cannot be remedied on appeal.").

Thomas-McDonald's mental health treatment records are irrelevant because she never placed her mental or emotional condition at issue through the pleadings or her fee petition. See Rousso v. Hannon, 146 So. 3d 66, 69 (Fla. 3d DCA 2014) (emphasis in original) (Discovery is limited to those matters relevant to the litigation **as framed by the parties' pleadings**."). Cf. Nelson v. Womble, 657 So. 2d 1221, 1222 (Fla. 5th DCA 1995) (finding medical records relevant and discoverable where plaintiff's mental and

emotional condition were placed at issue by alleging in pleadings that she "suffered mental anguish and loss of capacity for the enjoyment of life.").[4]

Nor did Silva ask Thomas-McDonald whether she was on any medication that would impair her deposition testimony. Thus, Silva's brief line of questioning on whether Thomas-McDonald had previously seen a psychiatrist did not open the door nor create a legally cognizable nexus between the requested mental health discovery and any claim or defense at issue. See Rodriguez v. City of South Miami, 260 So. 3d 338, 341 (Fla. 3d DCA 2018) (single reference to party being stable, taking medication, and seeing psychiatrist did not place mental condition at issue where litigant did not rely on it as an element of any claim or defense); Cruz-Govin v. Torres, 29 So. 3d 393, 395–96 (Fla. 3d DCA 2010) (opposing party's allegations of

---

[4] Silva also relies on the Second District's decision in Wilder v. Wilder for the proposition that the psychotherapist patient privilege does not extend to the identity of patients or mental health care providers. 993 So. 2d 182, 185 n.1 (Fla. 2d DCA 2008). In that case the Second District certified conflict with Fifth District's decision in Weinstock v. Groth. See 659 So. 2d 713, 715 (Fla. 5th DCA 1995) (holding mental healthcare professional's contact information was privileged under the psychotherapist-patient privilege). We need not comment on this conflict. Wilder is inapplicable because it involved different factual circumstances that are not present here. Mainly, unlike this petition, the wife in Wilder placed her mental and emotional condition at issue by asserting—in her pleadings—that she was under emotional distress before signing a prenuptial agreement. See 993 So. 2d 183–84.

impairment and substance use could not abrogate psychotherapist-patient privilege where patient did not himself place mental condition at issue).

Accordingly, the trial court departed from the essential requirements of the law by ordering Thomas-McDonald to answer Silva's interrogatories by disclosing mental health treatment records that are irrelevant to her fee petition and the pleadings. We grant the petition and quash the order on review.

Petition granted; order quashed.